

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | | |
|---|---|---|
| Monty Woods, | ) | Docket No. 2016-02-0494 |
|     Employee, | ) | |
| v. | ) | State File No. 43855-2016 |
| | ) | |
| Up Dish Services, LLC, | ) | Judge Brian K. Addington |
|     Employer, | ) | |
| And | ) | |
| | ) | |
| Continental Indemnity Co., | ) | |
|     Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on February 22, 2017, upon the Request for Expedited Hearing filed by Monty Woods for medical and temporary disability benefits. The central legal issues are whether Mr. Woods suffered an injury arising primarily out of and in the course and scope of his employment and whether he provided proper notice of his injury. The Court holds Mr. Woods has not come forward with sufficient evidence to establish he is likely to prevail at a hearing on the merits. Therefore, he is not entitled to the requested medical and temporary disability benefits.

### History of Claim

Mr. Woods, a resident of Haysi, Virginia, worked as a trainee installer with Up Dish for two weeks. After undergoing classroom training and warehouse work his first week, Up Dish assigned him to work with a trainer, Ron Atkinson.[1] Mr. Woods then assisted Mr. Atkinson installing internet and satellite television service.

---

[1] At the end of his first two weeks of employment, Mr. Woods' total wages were $1,278.25. This corresponds to an average weekly wage of $639.13 producing a $426.09 compensation rate.

1

## Mr. Woods' Version of Events

Mr. Woods testified that on Friday, April 22, 2016, while working at a customer's home in Kingsport, Tennessee, he ran cable through a crawlspace for the trainer. In his affidavit, he noted the cable was for a temporary internet mount, but during cross-examination, he admitted he was unsure of the cable's purpose. After exiting the crawlspace, he felt discomfort in his back and told the trainer he thought he pulled a muscle. Mr. Woods previously suffered pulled back muscles and had a long-term relationship with a chiropractor to treat those problems. Mr. Woods' back pain worsened as the day went on. Since Mr. Atkinson did not offer to report the matter to Up Dish, Mr. Woods decided to drive home to Virginia and to apply ice and heat to his back.

When Mr. Woods' discomfort did not improve, he decided to see his chiropractor on April 25. He called Brett Underwood, Up Dish's field service manager, to report he was going to the chiropractor and that he thought he injured his back at work. Mr. Underwood questioned him about the specifics of his injury, but Mr. Woods could not identify which particular work activity caused his injury.

## Mrs. Woods' Version of Events

Mr. Woods' wife, Linda Woods, provided an affidavit in which she explained that her husband came home from work experiencing low back pain. Mrs. Woods further explained that Mr. Woods called his supervisor on April 25 and told him he was injured, but could not specify the motion he made to cause his injury.

## Mr. Atkinson's Version of Events

Mr. Atkinson testified that Mr. Woods never complained about a work accident, but only made general statements about his back hurting after riding with him in their work vehicle. Further, he checked his records and found that he and Mr. Woods did not install a temporary internet mount on April 22, as Mr. Woods asserted in his affidavit. According to Mr. Atkinson, when Mr. Woods spoke to him about being absent from work because of his back pain, he never mentioned a work injury.

## Mr. Underwood's Version of Events

Mr. Underwood testified Mr. Woods told him on April 25 his back was sore and that he was going to see his chiropractor. Mr. Woods did not mention a work injury. Mr. Woods also called Mr. Underwood the following week to request another week off work due to back pain. Mr. Underwood relayed the messages from Mr. Woods to Gordon Lewis, the market operations manager.

2

*Mr. Lewis' Version of Events*

Mr. Lewis testified that Mr. Underwood informed him that Mr. Woods' absences were related to prior back problems. Further, when Mr. Woods spoke with Mr. Lewis about his absences, he did not mention a work injury. Mr. Woods told him he was seeing a chiropractor and would inform him of the chiropractor's determinations.

Later in June 2016, Mr. Lewis received a call from Pam Miller, Up Dish's human resource manager, who informed him that Mr. Woods filed a workers' compensation claim for his back. That phone call was the first notice to Mr. Lewis that Mr. Woods claimed a work injury.

*Post-Accident Events and Medical Treatment*

After talking to Mr. Underwood, Mr. Woods sought treatment with his chiropractor, Dr. Bradley VanDyke, on the Monday following the alleged accident. Although Mr. Woods testified he told Dr. VanDyke about pulling cables in a crawlspace, Dr. VanDyke recorded only that Mr. Woods began suffering low back pain while sitting in a vehicle and that travelling in the vehicle made his leg hurt worse. Dr. VanDyke referred Mr. Woods to Comprehensive Family Practice, Mr. Woods' primary care provider.

At Comprehensive, Coetta Neece, NP-C, took Mr. Woods' history and noted Mr. Woods' prior complaints with new pain intensity. Following the appointment, Mr. Woods underwent lumbar x-rays, which indicated moderate degenerative disc disease. NP-C Neece advised Mr. Woods to continue chiropractic treatment and later ordered an MRI when his symptoms did not improve.

Mr. Woods underwent the MRI on May 25. A radiologist interpreted the MRI to show, "Scattered multilevel degenerative changes within the lumbar spine as above, most severely affecting L5-S1 where there is a disc bulge with a left paracentral disc extrusion."

On June 3, Mr. Woods contacted Up Dish about filing a workers' compensation claim, and the next day, he filled-out an Employee Report of Injury form. Mr. Woods' report mirrored his testimony that he experienced low back pain after pulling cable for a temporary internet mount. Up Dish provided a physician panel to Mr. Woods, and he chose Urgent Care; however, when he went to Urgent Care, he could not get an appointment.

On June 6, Mr. Atkinson filed a witness report and, consistent with his testimony, noted Mr. Woods complained about his back, but said it was from a previous injury.

Because he could not get an appointment with the panel physician, Mr. Woods returned to NP-C Neece on June 15. She noted, for the first time, she was seeing him for a workers' compensation visit. Her records do not indicate any mechanism of injury. NP-C Neece referred Mr. Woods to East Tennessee Brain and Spine.

On June 22, Up Dish filed a C-23 Notice of Denial asserting: 1) there was no evidence to support that the injury arose from work; 2) Mr. Woods had pre-existing degenerative disc disease in his low back; and 3) he was merely sitting in a vehicle when his back started to hurt.

Mr. Woods pursued treatment with East Tennessee Brain and Spine. During his first appointment, he provided Isaac O'Dell, PA-C, with a history of an April 22, back injury that occurred as he crawled under a house pulling cable. Mr. Woods did not provide any history to PA-C O'Dell of prior back problems. PA-C O'Dell determined that Mr. Woods suffered an acute disc herniation and primarily related it to the work incident of April 22.

On August 1, Dr. VanDyke wrote a letter on Mr. Woods' behalf. (Ex. 13 at 24.) He noted Mr. Woods appeared at his office on April 25, for back pain radiating down his left leg into his outer four toes. Dr. VanDyke acknowledged that Mr. Woods treated with him in the past for cervical and low back pain radiating into his left and right groin and for a left knee injury. However, he noted that the radiation of pain into the left leg and outer four toes was new.

Mr. Woods continued to treat with all of his personal providers listed above until he underwent lumbar surgery by Dr. Timothy Fullagar at East Tennessee Brain and Spine on February 10, 2017.[2]

Prior to the surgery, Dr. W. Garrison Strickland performed a medical records review on behalf of Up Dish and issued a Form C-32 Medical Report. (Ex. 13, 121-136.) Dr. Strickland found that Mr. Woods did not suffer an injury as a result of the April 22, work incident. Up Dish provided a copy of the C-32, it attached the curriculum vitae but did not attach Dr. Strickland's supporting affidavit.

During the hearing, Mr. Woods contended he provided notice of his injury on April 22 and again on April 25, but no one with Up Dish filed a report regarding his injury. He asserted that he told his examining physicians the hurt his back while pulling cables at work but acknowledged that the records do not reference a work injury until July 2016. He requested temporary disability benefits for the period from April 23, 2016, to the present, in addition to reimbursement for past medical benefits.[3]

---

[2] The parties did not supply the records of Dr. Fullagar.
[3] Mr. Woods submitted medical bills and a mileage reimbursement chart. (Exhibits 8, 19.)

Also, Mr. Woods attempted to introduce four C-32 forms. The Court sustained Up Dish's objection to three of them. Up Dish did not object to Dr. VanDyke's C-32, but his C-32 neither contained his curriculum vitae as certified on the C-32, nor an affidavit. None of the C-32s contained an original signature.[4]

Up Dish asserted Mr. Woods did not provide notice of an injury until June 2016, two months after the alleged injury date. Up Dish contended that the late filing prejudiced it because it did not have an opportunity to obtain a timely drug-test, investigate the matter, or provide treatment until months after the alleged injury date. Further, Up Dish asserted Mr. Woods did not pull wire under a crawl space on the date in question. Additionally, it relied on its medical expert, Dr. W. Garrison Strickland, who determined that Mr. Woods did not suffer a compensable injury. Up Dish argued the Court should deny Mr. Woods' request for benefits.

## Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Mr. Woods, as the claimant, has the burden of proof on all essential elements of his claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Sept. 29, 2016). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2016). However, at an expedited hearing, Mr. Woods has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

Mr. Woods must show he suffered an injury caused by a specific incident or set of incidents arising primarily out of and in the course and scope of employment, identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A) (2016).

Regarding the incident in question, Mr. Woods was adamant that he felt pain in his back after he crawled under a house to install a temporary internet mount on April 22, 2016. However, Mr. Atkinson testified they did not install a temporary internet mount that day, and Mr. Woods admitted he did not know the purpose of the cable. The Court finds Mr. Atkinson's testimony more persuasive and holds Mr. Woods did not come forward with sufficient evidence for it to determine he is likely to succeed at a hearing on the merits.

Further, an injured employee must provide his employer notice of an injury within

---

[4] It appears to the Court that Dr. Fullagar's C-32 was not a true copy. By comparing the signatures on pages three of the C-32s (Exhibits 16, 18), it becomes apparent that someone simply copied Dr. Fullagar's signature.

thirty days of the incident unless there is a reasonable excuse. Tenn. Code Ann. § 50-6-201(a)(1) (2015). Based upon testimony at the Expedited Hearing, the Court finds that Mr. Woods did not provide notice of a work injury until June 3, 2016. While Mr. Woods claims otherwise, the weight of the evidence shows that Mr. Woods' initial reports to his employer were merely general statements about his back hurting, not reports of a work accident.

The Court also notes that, according to the provided records, Mr. Woods' initially told Dr. VanDyke that his pain started while sitting in a vehicle. Mr. Woods countered that Dr. VanDyke's notes were wrong and he told him that he injured his back while crawling under a house; however, the evidence does not support that assertion. Rather, the evidence supports a finding that it was not until after his MRI that Mr. Woods asserted he suffered a workers' compensation injury. The Court holds Mr. Woods did not come forward with sufficient evidence for it to conclude he is likely to succeed at a hearing on the merits regarding a reasonable excuse for failing to provide timely notice of his injury.

Additionally, there is no expert medical proof in the record to support a finding that Mr. Woods suffered an injury arising primarily out of and in the course and scope of employment. The Workers' Compensation Law allows the parties to submit direct testimony from a physician via a Form C-32. Tenn. Code Ann. § 50-6-235 (c)(1) (2016). However, neither party submitted a legally-sufficient C-32; none of C-32s contained original signatures or affidavits verifying the contents of the report, as required by statute.

As far as the remaining medical records are concerned, the opinions of NP-C Neece and PA-C O'Dell are insufficient to prove causation. *See Dorsey v. Amazon.com, Inc.* 2015 TN Wrk. Comp. App. Bd. 13, at *9-10 (May 14, 2015). The only remaining medical record is Dr. VanDyke's August 1, letter to Mr. Woods. In it, Dr. VanDyke discussed Mr. Woods' new pain complaints but did not state that these complaints primarily arose out of and in the course and scope of his employment with Up Dish. The Court, therefore, holds Mr. Woods has not come forward with sufficient evidence of an expert medical opinion relating his injury to his employment. Thus, he is not likely to succeed at a hearing on the merits.

Based on the above findings, the Court denies Mr. Woods' request for benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Woods' request for temporary disability and medical benefits is denied at this time.

2. This matter is set for a Scheduling Hearing on April 11, 2017, at 10:00 a.m. Eastern Time.

6

ENTERED this the 28th day of February, 2017.


    /s/ Brian K. Addington
**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**


Scheduling Hearing:

    A Scheduling Hearing has been set with Judge Brian K. Addington, Court of Workers' Compensation Claims, on April 11, 2017, at 10:00 a.m. Eastern Time. The parties must call 855-943-5044 toll-free to participate in the hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

## APPENDIX

<u>Exhibits:</u>
1. Affidavit of Monty Woods
2. Affidavit of Linda Woods
3. Wage Statement
4. Notice of Denial
5. Collective Exhibit-Injury Reports
6. First Report of Injury
7. Physician Panel
8. Collective Exhibit-Medical Bills
9. Buchanan General Hospital-X-ray report
10. Medical Records-Comprehensive Family Practice
11. Medical Records-East TN Brain and Spine
12. Medical Records-VanDyke Chiropractic
13. Collective Exhibit-Medical Records
14. Norton Community Hospital-MRI report
15. C-32-Dr. Bradley VanDyke
16. C-32-Isaac O'Dell, PA-C(for identification only)
17. C-32-Caetta Neece, NP-C(for identification only)
18. C-32-Dr. Timothy Fullagar(for identification only)
19. Request for Mileage
20. Statement of Brett Underwood

<u>Technical Record</u>
1. Petition for Benefit Determination, September 29, 2016
2. Dispute Certification Notice, November 18, 2016
3. Request for Expedited Hearing, January 9, 2017
4. Employer's Pre-Hearing Statement

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 28 day of February, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Monty Woods | X | | X | PO Box544<br>Haysi, VA  24256<br>Mwoods075@gmail.com |
| Sara Barnett, Esq.<br>Employers' Attorney | | | X | sarabarnett@spraginslaw.com |

_/s/ Penny Shrum_
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

9